2011 WY 16

**SHERIDAN COUNTY COMMISSION,**
Sheridan County, Wyoming,
Appellant (Respondent),

v.

**V.O. GOLD PROPERTIES, LLC,**
Appellee (Petitioner).

No. S–10–0071.

Supreme Court of Wyoming.

Feb. 4, 2011.

Representing Appellant: Matthew F. Redle and Lynn M. Smith of the Sheridan County Attorney's Office, Sheridan, Wyoming. Argument by Mr. Redle.

Representing Appellee: Eric K. Nelson of Brown, Drew & Massey, LLP, Casper, Wyoming.

———

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶1] The Board of County Commissioners of Sheridan County (the Board) appeals from a district court order reversing the Board's denial of a subdivision permit application submitted by V.O. Gold Properties, LLC (Gold) and remand of the matter to the Board for further proceedings. The Board concedes that the agency record is inadequate to allow judicial review, and concedes that remand is necessary to make a complete record. On appeal, the Board asks whether the hearing it will provide upon remand must be a contested case hearing, or may be a public hearing. We conclude that a contested case hearing is not required.

## ISSUE

[¶2] Is a subdivision applicant under Wyo. Stat. Ann. § 18–5–301 *et seq.* (Lexis-Nexis 2009) entitled to a contested case hearing?

## FACTS

[¶3] The relevant facts of this case are not many and are not disputed. Gold owns certain property in Sheridan County. In 2007, at Gold's request, the Board rezoned the property from agricultural to rural residential. Sometime prior to January 7, 2009, Gold submitted a subdivision and final plat application to the Sheridan County Public Works Department. On January 7, 2009, after allowing for public comment, the Sheridan County Planning and Zoning Commission (the Commission) recommended denial of the application. Gold requested, and was granted, a hearing before the Board to review the Commission's recommendation. The Board allowed Gold to continue to pursue the application. After allowing additional public comment, the Commission on April 1, 2009, again recommended denial of the application. On April 21, 2009, after a public hearing, the Board denied the application. The record basis for the Board's decision is limited to the minutes of the April 21, 2009, meeting because the Board's recording equipment failed. No separate findings of fact, conclusions of law, or final order were entered.

[¶4] Gold filed a Petition for Review in the district court on May 21, 2009. The allegations in that petition were that the Board's decision (1) was arbitrary, capricious, an abuse of discretion, and not in conformity with the law; (2) was made without observing procedures required by law; and (3) was not supported by substantial evidence. The district court heard the matter on December 1, 2009, and issued a decision letter on March 1, 2010. The district court determined (1) that the Board's actions were adjudicative and were, therefore, subject to judicial review, and (2) that the agency record was insufficient to allow judicial review. The district court "waffled" on the question now before this Court, remanding the matter to the Board for an "appropriate" hearing and declining "to mandate a contested case hearing under all circumstances."

## DISCUSSION

[¶ 5] The Board's concessions make it unnecessary for us to answer "substantive" questions about the Board's decision, because the Board will make a new decision upon remand. The question we must answer is what procedure the Board is to follow in reaching that decision; that is, is a public hearing sufficient, or must a contested case hearing be held? That is a question of law that we review *de novo*. *Hall v. Perry,* 2009 WY 83, ¶ 13, 211 P.3d 489, 494 (Wyo.2009); *Union Pac. Res. Co. v. Dolenc,* 2004 WY 36, ¶ 13, 86 P.3d 1287, 1291 (Wyo.2004).

[¶ 6] We have said many, many times that "if no statute or other law requires the 'legal right, duties or privileges of a party' to be determined at a trial type hearing, no contested case proceeding is required." *Northfork Citizens for Responsible Dev. v. Bd. of County Comm'rs of Park County,* 2010 WY 41, ¶ 51, 228 P.3d 838, 855 (Wyo. 2010); *see, e.g., In re Bd. of County Comm'rs, Sublette County,* 2001 WY 91, ¶¶ 12–18, 33 P.3d 107, 112–114 (Wyo.2001) (statute did not require State Board of Equalization to provide contested case hearing in examination of alleged improper tax assessment); *In re Application for Certificate of Need by HCA Health Serv.,* 689 P.2d 108, 110–114 (Wyo.1984) (federal/state statutory scheme contemplated contested case hearing in review of agency authorization of new hospital); *Carlson v. Bratton,* 681 P.2d 1333, 1338 (Wyo.1984) (neither statute nor city ordinance required contested case hearing where mayor fired chief of police); *Scarlett v. Town Council of Jackson,* 463 P.2d 26, 29 (Wyo.1969) (municipality's annexation decision did not require contested case hearing).

[¶ 7] In determining what "other law" would require that a hearing be a contested case hearing, we have frequently held that the determination of "adjudicative facts" requires a contested case hearing, but the determination of "legislative" facts does not.

See, e.g., *Sheridan Planning Ass'n v. Bd. of Sheridan County Comm'rs,* 924 P.2d 988, 990 (Wyo.1996) (approval of a planned unit development is "tantamount to amending zoning regulations and is, therefore, a legislative act"); *Tri–State Generation & Transmission Ass'n v. Wyo. Pub. Serv. Comm'n,* 735 P.2d 718, 721 (Wyo.1987) (hearing on application of one utility company to purchase assets of another raised issues of adjudicative facts requiring contested case hearing); *Bd. of County Comm'rs of Teton County v. Teton County Youth Servs.,* 652 P.2d 400, 416 (Wyo.1982) (decision to zone or rezone an area is legislative decision not requiring contested case hearing, while decision to deny zoning certificate under Wyo. Stat. Ann. § 18–5–203 is adjudicative in nature, thus requiring contested case hearing). We have also noted that the distinction between adjudicative facts and legislative facts is not always entirely clear. *Foster's Inc. v. City of Laramie,* 718 P.2d 868, 873–74 (Wyo.1986); *Scarlett,* 463 P.2d at 28. Generally speaking, legislative action "produces a general rule or policy," while adjudicatory action applies to "identifiable persons and specific situations." *Foster's,* 718 P.2d at 873 (quoting *Holding's Little Am. v. Bd. of County Comm'rs of Laramie County,* 670 P.2d 699, 702 (Wyo. 1983)). And finally, in recognizing the difficulty in distinguishing between legislative and adjudicative facts, we said the following:

> In cases where the adjudicative-legislative distinction is unclear, it is better to begin the analysis by determining whether there is statutory or constitutional law which demands a trial-type hearing. If such a hearing is not required by law, then it may be unnecessary for us to make the adjudicative-legislative determination. This is just such a case. There is a difficult issue of whether the facts before the agency were adjudicative or legislative.

*Foster's,* 718 P.2d at 873–74.[1]

[¶ 8] The appellee cites two cases— *Frankel v. Board of County Commissioners*

---

1. In *Foster's,* 718 P.2d at 873, we recognized the circular reasoning inherent in the Wyoming Administrative Procedure Act that makes it difficult at times to determine whether a contested case hearing is required:

> Under the Wyoming Administrative Procedure Act, all parties in a contested case must be afforded an opportunity for a trial-type hearing. A contested case is a proceeding

*of Teton County,* 2002 WY 13, 39 P.3d 420 (Wyo.2002) and *Board of County Commissioners, Albany County v. Federer Development Co.,* 682 P.2d 1062 (Wyo.1984)—for the proposition that this Court "has repeatedly applied these contested case requirements to decisions of county commissioners in deciding subdivision and development permit issues." In neither case, however, was the question of whether a subdivision permit application requires a contested case hearing raised directly. In *Frankel,* which involved not a subdivision permit application, but the county commissioners' denial of a grading and erosion control permit, the parties had agreed that the "matter constituted a contested case." *Frankel,* 2002 WY 13, ¶ 11, 39 P.3d at 424. In *Federer,* which did involve a subdivision permit application, the agency hearing appears to have been conducted as a contested case hearing, and judicial review took place pursuant to the Wyoming Administrative Procedure Act, but the sole question presented on appeal was whether substantial evidence supported the result, not whether a contested case hearing was required. *Federer,* 682 P.2d at 1064.

[¶ 9] The confusion engendered by the attempt to draw a line distinguishing legislative action from adjudicatory action is exemplified by two of our own cases. In *Holding's Little America v. Board of County Commissioners of Laramie County,* 670 P.2d 699, 702 (Wyo.1983), we quoted 1 Am.Jur.2d *Administrative Law* § 93 for the following proposition:

"Legislative power is the power to make, alter, or repeal laws or rules for the future. *To make a rule of conduct applicable to an individual who but for such action would be free from it is to legislate.*

"in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing."

We have interpreted the final phrase—opportunity for hearing—to mean opportunity for a trial-type hearing. This interpretation makes our analysis essentially circular. If the applicable law, usually a statute, requires a hearing and not a *trial-type* hearing, then that hearing is not defined as a contested case. If, on the other hand, that applicable law requires a trial-type hearing, then that case fits the defini-

"Legislative power is distinguished from judicial power, or legislation from adjudication, in that basically or usually it operates in the future, rather than on past transactions and circumstances, and generally, rather than particularly. * * * " (Footnotes omitted).

(Emphasis added.)

[¶ 10] The question before us in *Holding's Little America* was whether the agency action was legislative in nature and therefore not subject to judicial review, or was adjudicatory in nature and therefore subject to judicial review. We found the specific action at issue—the authorization of industrial development revenue bonds—to be adjudicatory action subject to judicial review, but we concluded further that "[t]he right of judicial review of an administrative decision is statutory." *Id.* at 702. This, of course, suggests that reviewability does not depend so much on our legislative versus adjudicatory decision as it does upon legislative intent. Beyond that, despite the conclusion that the agency action was adjudicatory, we stated that the applicable statute did not require a trial-type contested case hearing. *Id.* at 703. In other words, determining that agency action is adjudicatory, rather than legislative, does not define the nature of the statutory hearing that must be provided to an applicant.[2]

[¶ 11] At first glance, the case of *Pickle v. Board of County Commissioners of the County of Platte,* 764 P.2d 262 (Wyo.1988) appears to be on point with the instant case, and appears to say that approval or denial of a subdivision permit is not a legislative function, and therefore is an adjudicatory function. A close reading of the case, however, reveals that it involved questions quite differ-

tion of a contested case. A contested case mandates a trial-type hearing, completing the circle.

(Internal citations omitted.)

2. We also cited several cases indicating that both annexation proceedings and school unification proceedings were legislative in nature and did not require contested case hearings, but the record was reviewable to determine statutory compliance. *Holding's Little America,* 670 P.2d at 702.

ent from those presented here. In *Pickle*, homeowners in a subdivision were forced to move out of their homes because their water and septic systems were inadequate. *Id.* at 262. The lawsuit was not a challenge to agency action under the Wyoming Administrative Procedures Act. Rather, it was a negligence action against the county commissioners for failing "to comply with W.S. 18–5–306(a)(iv), which states that the Board shall require written certification of a licensed Wyoming engineer that the proposed sewage disposal system is adequate and safe." *Id.* at 264. The significant holding of the case was as follows:

> We should emphasize that the Board's policy determinations are not at issue here; we merely hold that the Board may be liable for failing to exercise reasonable care in performing basic tasks, such as the gathering of information.

*Id.* at 266.

[¶ 12] This brings us full circle to what we said in *Foster's*, 718 P.2d at 873–74: rather than trying to draw a line between legislative and adjudicative action, we should start our analysis by determining whether there is any law that requires a trial-type hearing. The statutes at issue in the instant case are those found at Wyo. Stat. Ann. § 18–5–301 *et seq.* (LexisNexis 2009), which pertain to real estate subdivisions. Nothing in these statutes requires a board of county commissioners or a county planning commission to provide a contested case hearing to an applicant for a subdivision permit. Wyo. Stat. Ann. § 18–5–305 does require each board of county commissioners to adopt rules and regulations necessary to implement the subdivision act, and Sheridan County has adopted such rules and regulations. The only pertinent hearing requirement in those rules and regulations is the requirement that the Commission receive public comment for the preliminary and final plats. Because neither the statutes nor the administrative rules provide for a contested case hearing, such is required when the Commission and the Board approve or deny a subdivision permit only if the applicant has a property right in that subdivision plan that is protected by constitutional due process.

[¶ 13] This Court has never directly addressed the question of whether an applicant for a subdivision permit under these statutes has a vested property interest that entitled him or her to due process of law. We have, however, occasionally considered the nature of a vested property right in similar contexts. *See Gilbert v. Bd. of County Comm'rs of Park County*, 2010 WY 68, ¶ 12, 232 P.3d 17, 24 (Wyo.2010) (no property right in variance request for contemplated land use change); *Northfork*, 2010 WY 41, ¶¶ 21–22, 228 P.3d at 846–47 (no vested right to variance or permit while matter under appeal or other challenge); *Snake River Brewing Co. v. Town of Jackson*, 2002 WY 11, ¶ 10, 39 P.3d 397, 403–04 (Wyo.2002) (right to continue existing nonconforming use after zoning change is vested property right); *Ebzery v. City of Sheridan*, 982 P.2d 1251, 1256–57 (Wyo.1999) (no vested right in variance until time for appeal has run); *Snake River Venture v. Bd. of County Comm'rs, Teton County*, 616 P.2d 744, 750 (Wyo.1980) (only non-conforming use protected as property right in face of zoning change is use that is in existence, not use that is simply contemplated); *Scarlett*, 463 P.2d at 29–30 (in annexation proceeding, no vested right to be either included or excluded from a municipality).

[¶ 14] The question of whether the review of an application for a subdivision permit requires a contested case hearing should be determined under reasoning consonant with the reasoning of the above-cited cases. Broadly stated, that reasoning is as follows: one has a vested property right only in existing land uses, and not in prospective land uses. In 1996, in the context of a civil rights action, the District Court for the District of Wyoming reasoned as follows in that regard:

> In order to establish a § 1983 violation, the plaintiff must prove (1) that "the conduct complained of was committed by a person acting under color of state law" and (2) that the conduct deprived plaintiff "of rights, privileges or immunities secured by the Constitution or laws of the United States." *Martinez–Velez v. Simonet*, 919 F.2d 808, 810 (1st Cir.1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981)); 42

U.S.C. § 1983. It is generally recognized that state law may endow an individual with a property interest. To have such a property interest, however, one "must have more than an abstract need or desire for it. [One] must have more than a unilateral expectation of it. [One] must, instead, have a legitimate claim of entitlement to it." *Martinez–Velez v. Simonet*, 919 F.2d at 810 (citing *Board of Regents of State Colleges, et al. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

Once it is determined an individual does have a property interest, "[p]rocedural due process must accompany the deprivation of an established property or liberty interest. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The range of protected interests is finite." *Elam v. Williams*, 753 F.Supp. 1530, 1535 (D.Kan.1990), *aff'd* 953 F.2d 1391 (10th Cir.1992). Quoting from *Unified School Dist. No. 457 v. Phifer*, 729 F.Supp. 1298 (D.Kan.1990), the Kansas district court stated:

> Though protected by it, property interests are not creations of the Constitution; they emerge from and their scope is defined "by existing rules or understandings that stem from an independent source such as state law...." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). A property interest is more than an "abstract need or desire" and also more than a "unilateral expectation." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. "The hallmark of property, ..., is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982); see also *Setliff v. Memorial Hosp. of Sheridan County*, 850 F.2d 1384, 1395 (10th Cir.1988). "It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily un-

dermined." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

*Elam v. Williams*, 753 F.Supp. 1530, 1535–36 (D.Kan.1990).

***This Court has uncovered no authority that suggests a property owner has a vested property right in a contemplated development or subdivision.*** In fact, all authority that has been studied by this Court suggests no such broad and loosely-defined property right exists. *See e.g., MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348–351, 106 S.Ct. 2561, 2566–2567, 91 L.Ed.2d 285 (1986); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1013–19, 112 S.Ct. 2886, 2892–2895, 120 L.Ed.2d 798 (1992); *Snake River Venture v. Board of County Commissioners, Teton County, Wyoming*, 616 P.2d 744, 751 (Wyo.1980) ("This is, of course, simply a more specific statement of the general rule that a property owner has no vested right (which will withstand a later zoning regulation) in a development which is merely contemplated.").

*Marshall v. Bd. of County Comm'rs for Johnson County*, 912 F.Supp. 1456, 1463–64 (D.Wyo.1996) (emphasis added).

[¶ 15] Had the legislature intended that a contested case hearing was required for subdivision permit applications, it would have said so. The legislature knows how to require a contested case hearing. *See, e.g.,* Wyo. Stat. Ann. § 7–13–105(c) (LexisNexis 2009): "[T]he applicant shall have the right to request a contested case hearing before the board...." Where words are missing from a statute, we are not at liberty to supply them. *Cheyenne Newspapers, Inc. v. Bldg. Code Bd. of Appeals of City of Cheyenne*, 2010 WY 2, ¶ 9, 222 P.3d 158, 162 (Wyo.2010). Beyond that, the practical considerations for not requiring a contested case hearing, which practical considerations we may presume were considered by the legislature, are persuasive: A contested case hearing requires adverse parties. Who are the adverse parties in a subdivision application process? If the planning commission recommends against the application, does it become the adverse party before the board of county commissioners? That makes no

sense. And what happens if the planning commission is in favor of the application? Do neighbors or other members of the public have to intervene in the contested case to comment upon the effects of the subdivision? Must they all be placed under oath? Must they all be subject to cross-examination, and do they all have the opportunity to cross-examine the applicant? The answers to these questions lead to the inevitable conclusion that a public hearing, rather than a contested case hearing, fits the situation.

## CONCLUSION

[¶ 16]   This applicant, under existing statutes and county regulations, was not entitled to a contested case hearing, and the prospect of developing a subdivision is not a vested property right protected by the constitutional right to due process. Therefore, no law requires a trial-type hearing. Furthermore, the decision whether to grant or deny a subdivision permit application is more nearly akin to legislative action than it is to adjudicative action. The existence of a subdivision implicates many policy and public welfare considerations, including the availability of water, soil conditions, population densities, neighborhood impact, access and road improvements, and the sufficiency of local schools. Consequently, the district court's remand to the board of county commissioners for a hearing is affirmed, with that hearing required to meet the Land Division Rules' requirement that the planning commission receive public comment on the preliminary plat and the final plat. As conceded by the Board, a complete record of its decision, with findings of fact and conclusions of law, must be provided because the agency action is subject to judicial review.

[¶ 17]   Affirmed in part, reversed in part, and remanded to the district court for further remand to the Board for action consistent herewith.

HILL, Justice concurring in part and dissenting in part.

[¶ 18]   I concur in the majority's decision to reverse so that the Board of County Commissioners can create a record. I dissent because I am convinced that a contested case

hearing *may* be required, although a more informal resolution of this matter is still a possibility. The current condition of the record is such that we know only that the Board voted to deny the subdivision permit. Upon careful consideration of all the facts and circumstances, the Board may yet grant the permit. However, prior to any hearing, I believe Gold is entitled to a formal notice of the deficiencies in his application, an opportunity to correct them, and if the Board still votes to deny the permit, then it must inform Gold upon what the basis of its decision rests, as well as all the facts and circumstances that justify its decision. Such a process would then allow both the district court and this Court an opportunity to meaningfully review that decision.