# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 48

### APRIL TERM, A.D. 2013

### April 25, 2013

| | |
|---|---|
| THE PUBLIC SERVICE COMMISSION OF WYOMING, | |
| Appellant (Respondent), | |
| v. | S-12-0119 |
| QWEST CORPORATION, | |
| Appellee (Petitioner). | |
| RANGE TELEPHONE COOPERATIVE, INC., RT COMMUNICATIONS, INC., DUBOIS TELEPHONE EXCHANGE, INC. AND ADVANCED COMMUNICATIONS TECHNOLOGY, INC., | |
| Appellants (Intervenors-Petitioners), | |
| v. | S-12-0120 |
| QWEST CORPORATION, | |
| Appellee (Petitioner). | |
| TRI COUNTY TELEPHONE ASSOCIATION and TCT WEST, INC., | |
| Appellants (Intervenors), | |

|                                      |             |
|--------------------------------------|-------------|
| v.                                   | S-12-0121   |
| QWEST CORPORATION,                   |             |
| Appellee<br>(Petitioner).            |             |
| THE OFFICE OF CONSUMER<br>ADVOCATE,  |             |
| Appellant<br>(Petitioner),           |             |
| v.                                   | S-12-0122   |
| THE PUBLIC SERVICE COMMISSION<br>OF WYOMING, |     |
| Appellee<br>(Respondent).            |             |

*Appeal from the District Court of Laramie County*
The Honorable Michael K. Davis, Judge

**Representing the Public Service Commission of Wyoming:**
>  Gregory A. Phillips, Wyoming Attorney General; Martin L. Hardsocg, Deputy Attorney General; Ryan T. Schelhaas, Senior Assistant Attorney General; Michael M. Robinson, Senior Assistant Attorney General. Argument by Mr. Robinson.

**Representing Qwest Corporation:**
>  Paul J. Hickey and O'Kelley H. Pearson of Hickey & Evans, LLP, Cheyenne, Wyoming. Argument by Mr. Pearson.

**Representing Range Telephone Cooperative, Inc., RT Communications, Inc., Dubois Telephone Exchange, Inc., and Advanced Communications Technology, Inc.:**
>  Elizabeth Zerga of Jubin & Zerga LLC, Cheyenne, Wyoming.

**Representing Tri County Telephone Association and TCT West, Inc.:**
>  Michael B. Rosenthal and Marianne Kunz Shanor of Hathaway & Kunz, P.C., Cheyenne, Wyoming. Argument by Ms. Shanor.

*Representing the Office of Consumer Advocate*:

Alexander K. Davison of Patton & Davison, Cheyenne, Wyoming.  Argument by Mr. Davison.

*Before KITE, C.J., HILL, VOIGT, BURKE, J.J., and GOLDEN, J., Retired*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Chief Justice.**

[¶1]  The manager of the Wyoming Universal Service Fund (WUSF) filed confidential reports with the Wyoming Public Service Commission (PSC) containing his recommendations for the WUSF assessment level for fiscal years 2009-2010 and 2010-2011.  Upon notice from the PSC that public hearings would be held to consider the manager's reports, Qwest asked for contested case hearings.  Qwest also asserted it did not have sufficient information to allow it to determine whether the manager's reports were correct.

[¶2]  The PSC denied Qwest's requests for contested case hearings, concluding WUSF proceedings are legislative in nature.  It convened public hearings and subsequently issued orders establishing the WUSF assessment levels as recommended by the manager.  The Office of Consumer Advocate (OCA) and Qwest filed petitions for review of the PSC order in the district court.

[¶3]  Before the district court, Qwest reiterated its argument that it could not address whether the PSC's orders were in error without seeing all of the information the PSC relied upon.  The PSC argued the telecommunications companies submitted the information necessary to make the WUSF determination under the promise of confidentiality.  Range Telephone Cooperative, Inc. (Range), RT Communications, Inc. (RT), Dubois Telephone Exchange, Inc. (Dubois), and Advanced Communications Technology, Inc. (Advanced Communications) filed motions to intervene for the limited purpose of protecting their confidential data.

[¶4]  After an initial hearing, the district court ordered portions of the 2009 data to be provided to Qwest but denied the request for 2010 data.  Subsequently, the district court held that the PSC erred in denying Qwest's requests for contested case hearings, reversed the administrative orders and remanded the cases to the PSC for contested case hearings.

[¶5]  Four notices of appeal from the district court's order were filed.  In case No. S-12-0119, the PSC claims the district court erred in granting Qwest access to confidential information and in holding that Qwest had a property interest and was entitled to a contested case hearing.  In case No. S-12-0120, Range, RT, Dubois and Advanced Communications assert the district court erred in granting Qwest access to confidential information.  Tri County Telephone Association (Tri County) likewise challenges the district court's order releasing the information in case No. S-12-0121.  In case No. S-12-0122, the OCA asserts the PSC erred in concluding it was not required to hold contested case hearings.  We hold that the PSC was required to convene contested case hearings.  We remand the cases to the district court with directions to remand to the PSC for contested case hearings.

1

## ISSUE

[¶6] This Court granted motions to consolidate the four appeals. The determinative issue for our consideration is whether Qwest was entitled to contested case hearings before the PSC.

## FACTS

[¶7] The PSC is charged with administering the WUSF. Qwest is a Colorado corporation authorized by the PSC to provide competitive and non-competitive services to customers in Wyoming. Range, RT, Dubois, Advanced Communications, and Tri County also provide telecommunications services to customers in Wyoming. The OCA is a division of the PSC charged with representing the interests of Wyoming citizens and utility customers in matters involving public utilities. Wyo. Stat. Ann. § 37-2-401 (LexisNexis 2011).

[¶8] The WUSF was created pursuant to Wyo. Stat. Ann. § 37-15-501 (LexisNexis 2011) of the Wyoming Telecommunications Act. The objective of the fund is to assist telecommunications customers located in areas of Wyoming where rates for essential services are high by assuring that they pay no more than 130 percent of the statewide average price for basic local exchange service. Section 37-15-501(c) and (d). To achieve this result, telecommunications companies providing services in Wyoming are required to contribute to the WUSF in accordance with the method designated by the PSC after notice and an opportunity for hearing. Section 37-15-501(a) and (b). Once customers who receive services in high rate areas of the state have paid for services up to the 130 percent benchmark, the WUSF distributes funds to the companies to the extent that their essential local exchange services prices exceed the benchmark after taking into account any contributions from the federal universal service fund (FUSF).

[¶9] Each year, the WUSF manager, a PSC employee, requires companies providing local exchange services in Wyoming to submit confidential data from the previous year including rates, essential services, number of lines, FUSF receipts and other information required by PSC rule. The manager analyzes the data, formulates recommendations and submits his findings and recommendations to the PSC. The PSC sets a hearing and provides notice to the companies that they may appear and comment on the fund manager's findings and recommendations. The PSC then determines the amount the companies must contribute to the fund and the amount to be distributed to them from the fund.

[¶10] On April 1, 2009, the fund manager submitted his annual confidential report for the 2009-2010 fiscal year to the PSC. Each telecommunications company received the portions of the confidential report pertaining to them; they did not receive confidential

information concerning other companies. The PSC then issued a notice of a public hearing to receive comment on the fund manager's report. Before the hearing, the OCA requested access to the confidential data underlying the manager's report. The PSC allowed the OCA to review the data after imposing restrictions on its dissemination and handling. The OCA also filed a motion to participate in the proceedings as a party.

[¶11] Also prior to the hearing, Qwest filed a motion to intervene and requested a contested case hearing to address its WUSF distribution. Qwest claimed that the fund manager had incorrectly calculated its distribution for the 2009-2010 fiscal year resulting in a lower distribution than it should have received. Qwest also contended it did not have sufficient information to determine whether the fund manager had correctly calculated the 130 percent benchmark and assessment level. After a hearing on Qwest's motion, the PSC ruled that a contested case hearing was not required because the only facts to be determined in a WUSF proceeding are legislative in nature.

[¶12] The matter proceeded to public hearing on the fund manager's report. Following the hearing, the PSC issued an order in which it adopted the report and determined the OCA was not a party to the proceeding. The PSC also issued an order denying Qwest's motion to intervene and for a contested case hearing. Qwest and the OCA filed petitions for rehearing which the PSC denied after another public hearing. The OCA filed a petition for review of the PSC's orders in the district court. Qwest and the other companies filed motions to intervene which the district court granted.

[¶13] In the meantime, the fund manager submitted his confidential report for the 2010-2011 fiscal year to the PSC. As it had done in 2009, the OCA moved to intervene and requested portions of the report. The PSC denied the motion to intervene but granted limited access to the confidential report. Qwest also asked to intervene and requested a contested case hearing. The PSC denied both requests and subsequently entered an order adopting the fund manager's report.

[¶14] Qwest and the OCA filed petitions for review in the district court and the other companies were allowed to intervene. Qwest sought access to the confidential information the fund manager relied on in making his recommendations, arguing that it could not address whether the PSC acted arbitrarily without seeing the information on which it relied. The PSC and the other companies argued that the information was submitted under the promise of confidentiality and disclosure might allow Qwest to obtain an unfair competitive advantage. The OCA aligned itself with Qwest and asserted much of the information could be acquired through the internet and was not particularly sensitive. The district court directed the OCA, which already had at least some of the information, to review the data and make a recommendation as to which portions, if any, could be provided to Qwest without harming the other companies. Ultimately, the district court granted Qwest access to the portions of the 2009 data the OCA recommended be provided but denied the request for 2010 data.

3

[¶15] After subsequent hearings, the district court issued an order holding that Qwest had a property interest in its WUSF distribution and was entitled to contested case hearings. The district court reversed the PSC's orders and remanded the cases for contested case hearings. As noted in paragraph 5 above, the parties appealed the district court order to this Court.

## STANDARD OF REVIEW

[¶16] The question of whether an agency must conduct a contested case hearing is one of law which we review *de novo. Sheridan County Comm'n v. V.O. Gold Properties*, LLC, 2011 WY 16, ¶ 5, 247 P.3d 48, 50 (Wyo. 2011).

## DISCUSSION

[¶17] The district court concluded that Qwest has a property interest in its WUSF distribution; therefore, it was denied due process when the PSC refused to convene contested case hearings. We agree that Qwest was entitled to contested case hearings, but reach that result through statutory interpretation. In doing so, we apply our usual rules of statutory interpretation.

> [Our] paramount consideration is to determine the legislature's intent, which must be ascertained initially and primarily from the words used in the statute. We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations.

*Barlow Ranch, LP v. Greencore Pipeline Co., LLC*, 2013 WY 34, ¶ 18, ___ P.3d ____, ____ (Wyo. 2013), citing *Michael's Constr., Inc. v. Am. Nat'l Bank*, 2012 WY 76, ¶ 12, 278 P.3d 701, 705 (Wyo. 2012). The determination of whether a statute is clear or ambiguous is a matter of law for the court. *Id*. When the language is clear, we give effect to the ordinary and obvious meaning of the words employed by the legislature. *Id*. In ascertaining the meaning of a statutory provision, all statutes relating to the same subject or having the same general purpose must be considered in *pari materia* and construed in harmony. *Id*. We do not apply our rules of statutory construction unless a statute is ambiguous. *Id*., citing *Vogel v. Onyx Acceptance Corp.,* 2011 WY 163, ¶ 24, 267 P.3d 1057, 1064 (Wyo. 2011).

[¶18]   Article 5 of the Wyoming Telecommunications Act contains the following provision:

**§ 3 7-15-501.   Universal   service   fund   created; contributions; administration.**

(a) There is hereby established the universal service fund to be administered in accordance with this section.  The fund shall be administered by the commission.  All telecommunications companies shall contribute to the universal service fund.  The dates for contributions to the fund and disbursements from the fund shall be set by the commission, *after notice and opportunity for hearing*, as necessary to accomplish the objectives of the fund as specified in subsections (c) and (d) of this section.  The costs of administering the fund may be included in determining required contributions.

(b) The commission shall *after notice and opportunity for hearing*, designate the method by which the contributions shall be calculated, collected and distributed.  The commission shall authorize an additional monthly charge to customers, in the amount specified by the commission, to recover each contributor's required payment to the universal service fund.  Any charge related to mobile telecommunications service shall only apply if the customer's place of primary use is in this state as provided by the Mobile Telecommunications Sourcing Act, 4 U.S.C. §§ 116 to 126.  The provisions of the Mobile Telecommunications Sourcing Act shall apply to this subsection.

(c) The commission shall administer the monies in the universal service fund to assist only those customers of telecommunications companies located in areas of this state with relatively high rates for essential services.  The commission, *after notice and opportunity for hearing*, shall determine a reasonable amount and a fair method of distributing monies.  The commission may authorize a credit to customer bills, in the amount specified by the commission, to reflect distributions received by the local exchange company from the universal service fund.  The commission shall ensure that the method shall promote the emergence of competition in providing local exchange service.

5

(d) In accordance with the method of distribution determined by the commission, a telecommunications company shall receive funds under this section to the extent that its essential local exchange service prices, after consideration of any contributions from the federal universal service fund, exceed one hundred thirty percent (130%) of the weighted statewide average essential local exchange service prices.

(e) The operation of the universal service fund may be suspended by the commission, based upon a public interest finding, ***after notice and an opportunity for a hearing***, that the fund is not then serving its intended purpose.

(f) The commission's decisions under this section shall be subject to the provisions of the Wyoming Administrative Procedure Act.

(Emphasis added.)

[¶19] Pursuant to this provision, the PSC is required to provide notice and opportunity for hearing before: 1) setting dates for contributions to and distributions from the WUSF; 2) designating the method by which contributions are calculated, collected and distributed; 3) determining the amount and method of distributing monies from the WUSF; and 4) suspending the operation of the WUSF. The question is what type of hearing the PSC is required to provide. We begin our analysis by determining whether there is any law that requires the PSC to hold a particular type of hearing before it makes the above determinations with respect to the WUSF. *Sheridan County Comm'n*, ¶ 12, 247 P.3d at 52.

[¶20] Section 37-15-501 itself is silent as to the type of hearing the PSC is required to provide. Article 4 of the Wyoming Telecommunications Act, however, contains the following provision:

**§ 37-15-401. Commission powers.**

(a) . . . the commission has the power to:
. . . .
(v) Hold hearings on complaints, or for good cause, upon notice and subject to the provisions of the Wyoming Administrative Procedure Act.

6

Pursuant to this provision, the PSC's power to hold hearings is subject to the WAPA.

[¶21] Under the WAPA, hearings take one of two forms. Wyo. Stat. Ann. § 16-3-103 (LexisNexis 2011) provides for public hearings in the rule-making context. The term "rule" is defined as:

> each agency statement of general applicability that implements, interprets and prescribes law, policy or ordinances of cities and towns, or describes the organization, procedures, or practice requirements of any agency.

Section 16-3-101(a)(ix). Wyo. Stat. Ann. §§ 16-3-107 through 16-3-112 (LexisNexis 2011) provide for contested case hearings.[1] "Contested case" is defined as a "proceeding including but not restricted to ratemaking, price fixing and licensing, in which legal rights, duties or privileges of a party *are required by law to be determined* by an agency *after an opportunity for hearing*." Section 16-3-101(b)(ii) (emphasis added). Section 37-15-501 of the Telecommunications Act clearly provides that the duty of telecommunications companies to contribute to, and their right to distributions from, the WUSF are to be determined by the PSC after "opportunity for hearing." Because the "rights [and] duties" of such companies "are required by law to be determined" by the PSC "after an opportunity for hearing" the proceedings meet the definition of a contested case under the WAPA and, pursuant to § 37-15-401, the PSC was required to follow the dictates of §§ 16-3-107 through 16-3-112 for contested cases prior to entering orders setting the WUSF assessment levels and distributions in 2009 and 2010.

[¶22] Arguing otherwise, the PSC contends public rather than contested case hearings are consistent with its historical practice in making WUSF determinations. The PSC asserts that since the inception of the WUSF in 1995, it has made such determinations eighteen times, fifteen at regular open meetings, three at legislative type hearings, and never in a contested case hearing. Citing *State ex rel. Sublette County Bd. of County Comm'rs v. State*, 2001 WY 91, ¶¶ 16-17, 33 P.3d 107, 113-14 (Wyo. 2001), the PSC urges this Court to defer to its interpretation of § 37-15-501 as giving it broad discretion to administer, operate and decide matters concerning the WUSF by way of public, rather than contested case, hearings.

[¶23] There is no question that one measure of a statute's meaning is the interpretation placed on it by the agency charged with its administration. *Id*. at 113. This Court will defer to that interpretation when it does not conflict with legislative intent. *Id*. The difficulty here is that the PSC's interpretation of § 37-15-501, and its historical use of

---

[1] There are actually three types of hearings identified in the WAPA. Wyo. Stat. Ann. § 16-3-113 (LexisNexis 2011) addresses license hearings but subsection (a) makes clear that the contested case provisions apply in that context.

public hearings to decide the matters set forth therein, conflicts with the express legislative directive found in §§ 37-15-401 and 37-15-501. When those provisions are read together with § 16-3-101(b)(ii), there simply is no question that a contested case hearing is required.

[¶24] The PSC also argues that if the legislature intended to require contested case hearings for setting the parameters of the WUSF it would have said so in § 37-15-501. The PSC asserts the omission of the words "contested case" in that statutory provision shows that the legislature meant something other than a contested case hearing when it used the phrase "after notice and opportunity for hearing." The PSC also points to other language found in § 37-15-501 as demonstrating the legislature's intent to allow it to exercise its discretion in selecting the method best suited to achieving the goals and objectives of the WUSF. The PSC references, for example, the language in § 37-15-501(a) authorizing it to set the dates for contributions and disbursements, after notice and opportunity for hearing, "as necessary to accomplish the objectives of the fund" and the language in § 37-15-501(c) requiring it to determine, after notice and opportunity for hearing, a reasonable amount and fair method of distributing monies by a method that ensures competition. The PSC contends this statutory language is consistent with the kind of language required for rulemaking under the WAPA. The PSC also directs our attention to § 37-15-501(f), which states that the PSC's "decisions" concerning the WUSF are subject to the provisions of the WAPA. Because subsection (f) does not state that the PSC's "proceedings" are subject to the WAPA, the PSC argues, contested case hearings are not required. Citing *Northfork Citizens for Responsible Dev. v. Bd. of County Comm'rs of Park County*, 2010 WY 41, ¶ 51, 228 P.3d 838, 855 (Wyo. 2010) and *Carlson v. Bratton*, 681 P.2d 1333, 1338 (Wyo. 1984), the PSC argues that since § 37-15-501 does not mandate a contested case hearing in WUSF proceedings, no such hearing is required.

[¶25] Again, the difficulty with the PSC's arguments is that they do not take into account § 37-15-401(a)(v) which expressly states that the PSC's power to hold hearings is "subject to the provisions of the Wyoming Administrative Procedure Act." The argument also does not account for the language in § 37-15-501 stating that the "rights [and] duties" of such companies "are required by law to be determined" by the PSC "after an opportunity for hearing." That language, read in harmony with the language in § 16-3-101(b)(ii) defining a "contested case" as a proceeding in which legal rights and duties of a party "***are required by law to be determined*** by an agency ***after an opportunity for hearing***" places WUSF proceedings squarely within the class of cases in which an underlying statute, in this case § 37-15-501, requires a contested case hearing. Thus, this case is distinguishable from cases where the underlying statutes at issue contained no requirement that the legal rights and duties of a party be determined at a trial type hearing and this Court concluded contested case hearings were not required. Giving the language in §§ 37-15-401(a)(v), 37-15-501 and 16-3-101(b)(ii) its plain and ordinary meaning, the legislature has mandated contested case hearings in WUSF

8

proceedings where the legal rights and duties of parties are to be determined after opportunity for hearing.

[¶26]  The PSC argues that practical considerations must be taken into account in determining whether a contested case hearing is required for making determinations involving the WUSF.  The PSC asserts that a contested case hearing requires adverse parties, a requirement that is lacking in WUSF proceedings.  The PSC also contends contested case hearings in the context of setting WUSF contributions and distributions simply is not workable because so many companies and consumers are involved, and requiring contested case hearings would make it impossible to resolve the issues in a quick and efficient manner, would consume significant administrative resources and would result in uncertainty, confusion and delay.

[¶27]  We find no merit in the PSC's assertion that its hearings lack adverse parties.  In PSC hearings, like many other administrative proceedings, agency staff appears and presents the agency's position while members of the public appear and present their positions.  In WUSF hearings specifically, the  fund  manager presents his recommendations and representatives of the telecommunications companies present their positions.  This process is adversarial and satisfies the requirement for a contested case hearing.

[¶28]  While there may be merit to the PSC's other concerns, this Court's task is to interpret statutory language as written unless it is ambiguous.  Here, the language is clear – the PSC is authorized to conduct hearings in accordance with the WAPA; the rights and duties of telecommunications companies under the WUSF are to be determined "after an opportunity for hearing;" therefore, a contested case hearing is required as set forth in §§ 16-3-107 through 16-3-112.  If this result is not what the legislature intended, and it agrees with the PSC's position that contested cases are not workable in the context of the WUSF, it is up to the legislature to amend the statutes.  It may be that in some cases, where the facts are not in dispute or the  factual findings apply broadly to all telecommunications companies, contested case hearings are not an effective way of resolving the issues.  However, where particular companies are uniquely situated such that adjudicative facts  apply individually to them, due process concerns  arise and contested case hearings are necessary.  Clearly, these due process concerns are the basis for the legislature's decision to make the PSC's power to hold hearings "subject to the provisions of the Wyoming Administrative Procedure Act."

[¶29]  Given our holding that Qwest was entitled to a contested case hearing before the PSC, there is no need for this Court to address the district court's decision to grant Qwest access to the confidential data of other telecommunications companies.  On remand, prior to the contested case hearing, the PSC will need to decide that issue in accordance with its own rules and  in light of  the WAPA  statutes and rules governing contested case hearings.

[¶30]   We affirm on different grounds the district court's holding that the PSC was required to convene contested case hearings and remand these cases to the district court with directions to remand to the PSC for proceedings consistent with this opinion.